And it is case number 22-30572, Larpenter v. Vera, and we'll hear from Brent Rhodes first. Good morning, Your Honors. I appreciate the opportunity to be here today. The main issue in this case, despite the kind of scattershot arguments that are made throughout the briefs, and the reason why that is is because the trial court ruling in and of itself was a bit scattershot in its reasoning, but the main crux of the argument here is whether Nicholas Vera, a police officer who was acting as private security for a private event on behalf of a private employer, is entitled to qualified immunity. When he opted to restrain and severely injure a representative of the lessee of the leased premises for that private event, without probable cause of any type of crime, without reasonable suspicion of any crime, with admittedly no threat to person or property, this officer decided that this man needed to be removed from the premises because it was 1-30, and that's basically it. He used a disproportionate, unsanctioned technique in that restraint, and that restraint caused severe injury to his left shoulder, to Mr. Larpenter's left shoulder. He had five tendon tears, ruptures in his left shoulder. He had two years of medical treatment that culminated in surgery as a result of this. Mr. Vera admitted that he did not use a transport wrist lock, which if he had done so, the level of resistance would have been proportionate to the injury. Now, Officer Vera basically stated that Mr. Larpenter did not resist in any way, shape, or form. So if Mr. Larpenter did not resist, then why was he so severely injured? And the reason why he was severely injured is because Mr. Vera used a technique that was unsanctioned. He used a chicken wing technique, which, quote, he said he learned from watching pro wrestling. So my client was grabbed in front of his wife and family, his in-laws, who were in the royal court. He was lifted off of the ground, and a thumb was put into his mandible, and he was dragged 100 yards, all the while not resisting. So what was the infraction? Apparently, Officer Vera had instructed people to leave the premises because it was time to go. Well, at the end of these events, there's a lot of stuff that needs to be done, and they were going back and forth, loading and unloading these things. And Officer Vera allegedly made this announcement for everybody to leave, and when my client came in to grab more cargo, Officer Vera says, What are you doing here? And he used some expletives. And my client says, Well, we're just getting out of here. We want to get out of here too. And he just grabbed some more cargo, and that's when he was restrained by Officer Vera. Now, that's just the facts of the case. There were a lot of arguments that were made throughout the briefs, but I think that the one that matters the most is the one that the trial court didn't even address, and that's the first prong of whether qualified immunity is even available in this situation. See, Judge Barbier, he went straight to— You didn't argue that until your reply brief, right? That is a fact. Okay, so is that forfeited? I hope not. Okay. I hope not. And let me tell you the reason why. Look, this was in the context of a motion for summary judgment. Ultimately, in my mind, I'm thinking, Okay, let's dispute these facts. Show why they're disputed. So I went for the more technical route in my appellate brief because I thought maybe that's what the court wanted to see. And it wasn't until I realized that the whole thing falls apart when you go to look as to why qualified immunity is even allowed in this particular situation. I mean, imagine that Officer Vera was not a cop at all. You wouldn't have a 1983 case. That's true. That's true. But I would still have a state tort case that would be recoverable because he'd still have to be made whole, you know? So basically what Judge Barbier says is, Well, he didn't need probable cause. He didn't need reasonable suspicion to grab Mr. Lockhart because he was acting as a security guard. So what Judge Barbier does is he endows him with all the protections of qualified immunity but then absolves him from all responsibilities to preserve the due process of Mr. Labrador. And that's why I say if he wasn't a cop, he would be the perfect bouncer, the perfect security guard. You can hire a police officer to come work at a nightclub, and not only do you get qualified immunity, but you also don't have to worry about vicarious liability either because he can do what he wants. And he doesn't have to worry about probable cause. He doesn't have to worry about reasonable suspicion. He can just hurt people and throw them out. It's too bad if they get hurt. And that's basically the way it is. That's why qualified immunity was never meant to be applied in private interests. It's meant to be applied when there's a furtherance of a governmental interest, a public interest. This is a private event, private facility. There was no public interest that was being solved here. There was no crime that Mr. Labrador was committing. His only infraction, if there is to say that, is that they violated the terms of the lease by staying too long. Now, a landlord is not allowed— Do you agree that we should consider the claims as two separate claims, the false arrest and then an excessive force claim? Two different claims, right? I would say that it's two instances. Whether or not they're two different claims, it all resulted in the same damage. But for 1983 purposes, we have to consider them as two separate acts committed by the defendant. Separate, compensable acts, yes. Okay, all right. And just to confirm, I'm not quite sure you fully answered Judge Haynes' question. You did not make the argument about unavailability of qualified immunity until your reply brief, is that correct? You did not make it up front in response? That's correct, and the reason why is because it flew over everybody's radar, including the trial courts. And so it wasn't until I got into other jurisdictions, because there was nothing in the Fifth Circuit that dealt with this particular issue, I had to go search other jurisdictions. I said, this just simply does not make sense. There's no way this can work. And when I found that case in Cal, I think it was in the Ninth Circuit, the Bracken case, dealing with the police officer who was acting as a security guard for the hotel, that's when they got into Bracken and Richardson and Filarski and those cases, and I said, wow, the trial court missed the whole first prong. And so we shouldn't even be sitting here with qualified immunity at all, because it wasn't serving a public interest. And I'm certain that this Court doesn't want to grant a security guard, someone acting as a security guard, qualified immunity for private interests alone. That's not the policy behind qualified immunity. That's not the reason why qualified immunity exists. So there's a couple of other things, too, and this is another reason why I didn't really address it until the reply brief, is because, first of all, Nicholas Vara didn't even answer my amendment, my supplemental amended petition. And so, to me, it was procedurally premature for them to even be talking about a summary judgment. And I would have liked to have even seen this argument more in a 12b6 motion before we spent two years of litigation, because if qualified immunity existed three weeks before trial, it also existed at the 12b6 level, too. So I didn't like that delay. I mean, there was no reason to spend all that time and money if that was the case. They don't have qualified immunity, but they could have at least brought that up earlier, which is usually how it's done. So why don't you address the merits of the qualified immunity argument, assuming, arguendo, we conclude either that you're wrong or that you're too late in raising that. All right. So let's go to the Bracken case, and that is, bear with me here, I apologize. In the Bracken case, this is in the Ninth Circuit, it says qualified immunity protects government officers in the performance of their public governmental functions. It does so not to benefit the agents of government, but to safeguard government itself and thereby to protect the public at large. And based on the history and the purposes that underlie government employee immunity, qualified immunity from civil liability. Well, let me ask you this. If we were to reverse the qualified immunity, whether on the merits or on the argument that you just made in the reply brief, that would undo the sua sponte dismissal of the, let's see, HUMA police department, all these other, these entity defendants, right? I don't think so. It wouldn't? No, and the reason why is because, first of all, the non-movements who were released from this case never filed anything. Right, so there was no basis for their grant other than that they were under, essentially, Monell liability for Vera. And if Vera is liable, then why aren't they still, then you're saying they should still be dismissed? Oh, no, I don't want them to be dismissed. Okay, that was my question. That's why I surprised you answered it that way. No, I was about to get to that. I don't want them dismissed. I don't think they should be dismissed. Okay, so my point is they were dismissed, obviously, the only reason, and their argument, they argued it on the merits. Because Vera prevailed, then there's nothing for them. But if Vera doesn't prevail, then aren't they back in the picture? How does qualified immunity apply to a private entity? Doesn't it turn respondeat superior and vicarious liability on its head in that situation? Because it doesn't mean that he's not liable for what he did. He's just immune from the liability. Does that liability still go up the chain to vicarious liability? And then also we're dealing with an indemnification clause in the contract. You have state law claims as well that are vicarious liability. Is that your argument on that? Yes, sir. And then also there might even be an independent cause of action. Because Nicholas Vera kept saying, well, the reason why I physically escorted him out of that civic center is because the shadowy representative of the civic center told me I needed to get everybody out. That person has never been identified. And informally, that person does not exist. And I got that confirmation in different areas. But that's who they're trying to blame it all on. And that's why in the Heaney case where they said, well, I'm kind of getting on a different stage here, because there's qualified immunity where it's generally available, and then there's qualified immunity. But do you have an exception carved in as clearly established violation of a civil right? All right? I'm talking about the first prong mostly. But the second prong still exists, too, because we have proven that there was a violation of the clearly established right, in that you can't arrest somebody without probable cause or reasonable suspicion, and you certainly can't do it without notice to the point to where you injure somebody so severely that they have to have an $80,000 surgery. The whole point of all of this is to try to get my client to be made whole. And are we looking for a windfall on some civil rights violation and that kind of thing? Look, 1983 comes with the fact that Mr. Vera was acting as a police officer for a private event and acting as security at a private event. So it's not necessarily ñ it wasn't a bonus thing. We weren't trying to get a bonus because we just want to be made whole. My client just simply wants to be made whole because it was improper what happened to him. He was embarrassed in front of his family. You know, and that was another thing. Judge Barbier dismissed my client's lawsuit consortium claim, saying that she was more upset by the fact that she's been ostracized from the crew because this lawsuit had to be brought. Now, there may be some truth to that, but in her mind, whose fault is that? Is it Vera's fault? Is it her husband's fault for having to bring his claim? It takes a lot of courage just to launch litigation, especially against a police officer. It takes even more courage when you have to launch litigation against your friend's entity because they indemnified the cop. And so there is some consortium issues there. There is a strain on the relationship. You can't tell me somebody who's had two years of medical treatment and a severe shoulder surgery that did not affect the spouse in some way. And then, of course, we've got the Lejeune damages where she witnessed the whole thing. And so that's basically where we stand on that, Your Honors. If there's any more questions you have, I'd be glad to answer them. Any more? Okay, thank you. You've saved time for rebuttal. All right, we have two minutes for Mr. Sullivan for the entities. Good morning. May it please the Court, Jerry Sullivan on behalf of Terror Carnival Club. I reserve just a short period of time because most of the elements of the matter relate to the state and Officer Vera, so I would defer to the state on that. However, I would note in record, page 225, the agreement is between a public entity, Terrebonne Parish Consolidated Government is the owner of the facility, Terrebonne Civic Center, in which this incident occurred. It was not a private facility but a public facility. And they require that a person from the police department be hired. And because it is a public building, the only people that can provide security for that event is the Houma Police Department. In this instance, the state was brought in, the Probation and Parole Department, solely because the Houma Police Department was taxed because it was a Mardi Gras event, it was Mardi Gras season, and they were shorthanded, so therefore they requested two members of the state Probation and Parole Office to participate. And, in fact, they did participate. Officer Vera wore his state Probation and Parole Officer uniform, and he specifically testified in his deposition that he had arrest authority and was there on behalf of the state. Do you agree with the notion that if we were to reverse on the qualified immunity that you all would be back in play? Absolutely, Your Honor, we would. And with those caveats, we would defer to the state on the other argument. Thank you. Okay. Thank you. All right. We'll hear from Ms. Glazer for Vera. Thank you, Your Honor. Phyllis Glazer on behalf of Officer Nicholas Vera, or Vera. I would like to echo that this was not a private event. This was an event at a public facility that was, as Mr. Sullivan just said, it was an agreement between the Terrebonne Parish Consolidated Government and the Mardi Gras crew to host the event at a public building, which was. . . So it was a private event at a public building. Yes, it was a private event at a public building, but that didn't make this a private detail. The crew wasn't controlling Officer Vera or any of the other officers that were on the scene. They were there working for the government, the parish, the city, the Consolidated Government, as it's called, TPCG. So then how could he claim that he had, because he was told by the chairman or whatever that 1.30 it ends and you've got to let him go, then how can that fit in what you just said? The Civic Center. The Civic Center employees were telling him that. That's what he's always said, and the Civic Center employees are employees of the government. It's all in the pleadings, which brings us to . . . Well, your opponent says there's not anybody that told him, so that's why I was confused a little bit about who told him, because it's nobody, supposedly. Well, there's no evidence that it was nobody. You've got Officer Vera and another officer who testified that they were . . . Evidence of nobody. Okay, go ahead. Maybe it was a vice principal. I'm sorry, I couldn't resist. Officer Vera testified that the Civic Center employees told him to tell them to leave. Another officer, and the name is escaping me right this second, but another officer corroborated that testimony. The employee who told them didn't testify, and now the failure of the defendant to come up with that evidence is now the basis of that argument. That's not the defendant's burden. It's the plaintiff's burden to come forth with evidence on summary judgment. How is the plaintiff supposed to find the nobody? I mean, so if the plaintiff says this is a lie, then, yeah, y'all need to raise a fact issue on that . . . Sure. . . . or show . . . avoid a fact issue, because y'all are moving for the summary judgment. Sure. So you need to avoid a fact issue on that by having the person say it, if it matters. There was no challenge to the admissibility of the testimony from the two officers, Vera and the other officer, that they were told this. The other one said it was kind of like, it's time to wrap up, as opposed to get them out, which is the thing that Vera . . . I mean, I don't think anybody's saying the party was supposed to last longer than 1.30. The question is just, could you just start grabbing people and throwing them out of the building? Right. Only the one. As opposed to saying, come on, let's go. Which you did. It's time to leave. Please head out of this . . . if I were to say, head out of this courtroom, that would be different from me picking you up and throwing you out. Right. Of course. Right. The famous, you don't have to go home, but you can't stay here, that kind of thing. That's what happened. That's what happened twice, according to the testimony. Officer Vera did that more than once. Leave. Y'all need to leave now. Party's over. You need to go. And, they didn't. And, he made the rounds a couple of times. They made announcements. I mean, that's in . . . Judge Barbier found that that was one of the undisputed facts. There were, you know, efforts to ask the people to go. And, even Mr. Larpenter admits that he was asked to leave. And, in particular, he says that he was asked to leave after leaving and coming back. And, Officer Vera's like, what are you doing coming back? The party's over. You know? And, of course, there's a difference about the tone of that conversation. But, the plaintiff says that that conversation happened. Counsel, let me ask you. It seems like the factual dispute that's at the center of the case really is on the excessive force claim. That's correct. And, it's very disputed. Why doesn't that dispute govern . . . Why doesn't it prevent this court from deciding the issue? I mean, those are material facts that are disputed. And, if the plaintiff's version were true, then he may not have qualified immunity. Why can't we just hang our hat on that peg and reverse, at least as to the excessive force claim? In other words, his argument is the district court incorrectly accepted the defendant's version of what happened. That's the center of his argument. And, there is a dispute, a pretty serious dispute over what happened. Why is that not error? Well, there's a dispute, I think, about a little . . . I don't want to call it a big dispute. There's a dispute about the force that was used, the amount of the force used. There's not really a dispute about the surrounding circumstances. So, your question earlier, aren't the seizure and the force evaluated separately? Absolutely, that's well established. And, the reason why he was being moved from one point to the other, those facts are not disputed. But, the force, the actual force that was used. So, you've got one description of it as a chicken wing, the professional wrestling move. Professional wrestling, of course, is fake. But, the chicken wing, and then you've got the wrist lock escort position. There's no evidence in the record as to why those are different. They're different descriptions, but they're not actually different things. Didn't Vera admit that? That they were different? No, he described it as a chicken wing. That's how he . . . when asked about the move that he used . . . He said it wasn't what he was taught to do. He said it wasn't what he was taught to do as a parole officer, but it was what he was taught to do as a police officer. It is different, though. Then, the maneuver that he said that he used, the . . . I'm not sure how it's different, though. I mean, where he . . . I mean, again, we've got fact issues. Yeah, but I'm not sure that this matters. And, we do have an issue of whether this . . . I mean, a seizure is the same as an arrest in this context. It's not the same as ultimately charging him with X, Y, Z. But, the seizure is essentially an arrest at that point, even though he didn't later charge him. I'm not sure that I agree that . . . At least that's the argument they're making. I'm not agreeing. Correct, yeah. I don't agree that it was an arrest. I don't agree that it was an arrest that required the support of probable cause in the way that . . . The typical arrest that we imagine would be . . . Well, how can you just start grabbing people and throwing them around if you're not arresting them? If they're not committing some crime or you're not arresting them or whatever . . . How can police officers just start grabbing people and throwing them around? But, that's not what they . . . That's news to me. That's not what even they're alleging happened. They're alleging that he . . . They are alleging that he was grabbed. They're alleging that he was picked up. And, they were alleging that he was moved directly to the . . . Seizure? Yes, a seizure, but not necessarily an arrest. A seizure is within the arrest bucket. Yeah, but it's a scale or a . . . What's the word? There's a spectrum of seizures. You've got Terry. You've got other short investigative . . . It's hard to even say that this is a detention because they didn't want him to stay. They didn't want him to be detained. They wanted him to move. This is more akin to a crowd control situation than an arrest, detention, investigatory stop kind of situation. He was not being questioned.  Okay, but you say the facts aren't disputed on that, but actually he did dispute it. He said he was getting ready to leave. He turned around to pick up something off the table, and that was when he was attacked. But, he was leaving, and he said so. He said, we want to get out of here, but we've just got stuff on the table. I mean, if I was at some event, and I was told to leave, and I realized my purse was over there on that chair, would it be a crime for me to go pick up my purse before I walked out? That's a scary thought. Yes, it is a scary thought. Okay, so would anybody say that? I mean, absent some emergency or some crazy thing, but just in general, the party's over. It's time to go. Is it a crime to go pick up your purse off the chair? A crime? Probably not. Does it deserve being attacked and seized to be thrown out when you're like, excuse me, I'm just going to go grab my purse, and you run over and get your purse and walk out? Why isn't that good enough? That it may rise to the level of a Fourth Amendment violation, but that doesn't necessarily impart liability on the officer, who needs to know his reaction is going to depend on what he knows. How do you respond to the Hanks case? The Hanks case involved a person on the side of the highway. This is one that, of course, wasn't raised until the reply. You don't have to not rely on cases in your reply brief. There's no law that says that's not raisable. No, no, this is on the issue. But I'm asking you to respond to it because it was in the reply brief. Right, so the Hanks case involved a person who was on the side of the highway allegedly looking for a cell phone. The officer stopped behind him. He was stopped on the side or rolling very slowly on the side of the highway. The officer stops him to investigate this odd behavior on the side of the highway. And the plaintiff explains he's there looking for a cell phone, and the officer is investigating and conducts essentially a stop. All of the details of the stop I'm not completely familiar with, but I know that it escalated very, very quickly from a what are you doing here on the side of the highway acting oddly to an extreme use of force and an arrest with serious injuries and stuff. It is completely different here. There is no question as to why Officer Vera did what he did. He did what he did to get him out of the building. That's it. There's no dispute about that, whether he had the authority to do it, whether he should have done other— What if he shot him? Would that be okay? He didn't shoot him, though. But what if he did? You're saying, well, he was just trying to get him out, whatever it takes. Okay, well, what about shooting him? I mean, but he didn't. Wouldn't that be excessive force? I mean, I think in the circumstances, there's no evidence that Mr. Larpenter was armed. My point is that facts of excessive force mean you used more force than necessary, even for a valid point. Okay, so you validly are arresting someone, but you shoot them when they're just standing there with no gun and holding their arms up and all of that, versus someone pulling a gun on the police officer and the police officer shooting them. Those are two really different cases, right? That is correct, and that goes directly to Judge Englehart's point that the legality of the arrest or seizure or whatever is evaluated separately from the excessiveness of the force. Okay. And that is one of them. So that's why we're talking about that. Why was this degree of effort necessary when this guy's just picking up stuff off the table that I think belonged to his father-in-law or whatever and leaving? I'm not saying, hey, I'm going to stay and you better not bother me anymore. I'm staying here all night or something like that. He wasn't arguing about I want to stay. He was just trying to pick stuff up off the table. Well, he had previously argued about staying twice. I mean, every time. There's a dispute on that, on what he was doing. He was picking up stuff. Apparently he had a bunch of junk on the tables and was picking it up. And I don't think that's surprising in Mardi Gras parties that there's a lot of stuff. Right, including other drinks possibly. Who knows? We don't know. He doesn't say. But we have to evaluate the excessiveness of the use of force from the perspective of the officer on the scene, not with the 20-20 vision of hindsight, right? That's whether we're talking in the qualified immunity context or not. That's how a Fourth Amendment claim is evaluated. And so did Officer Vera overreact to that movement where he turned around again after being asked to leave, where he turned back to his group that he had been staying with and loitering with? Possibly. But us questioning that kind of thing in hindsight without any evidence, that's something we're not allowed to do. And so this is where we need to look at the cases to say, in these circumstances, given what Officer Vera knew, resolving the material disputes in the plaintiff's favor, was it objectively unreasonable to apply force at this time to encourage him to leave, to get him out of the building? And then was it unreasonable to use the amount of force that was used? And in my last two and a half minutes, I would very, very briefly like to discuss the waiver of the issue about the private detail. Aside from the fact that Officer Vera was, in fact, working for the government in all respects, except that it was at a private event in a government building, this issue was not, as we know, it was not raised until the reply brief. However, in the pleadings, the amended complaint, the motion for summary judgment, the facts about that this was a private detail or whatever, those were all pleaded. But notably, in the complaint itself and in the amended complaint, it says that Officer Vera was acting in the course and scope of his employment with, originally it said the parish of Terrebonne or the city of Houma, and in the amended complaint with the Department of Public Safety and Corrections. With regard to the answer, Officer Vera did answer the plaintiff's original complaint, the amended complaint. All it did was switch his employer from the city of Houma to the state of Louisiana, Department of Public Safety and Corrections, which was then subsequently dismissed from the suit for lack of jurisdiction. So there was no need, there wasn't any additional facts in that amendment that required an answer. The qualified immunity defense had been pleaded already, and it was at that point that the burden shifted to the plaintiff to show that they weren't entitled to qualified immunity based on allegations that, pleaded allegations from the plaintiff that Nicholas Vera was acting in the course and scope of his employment under color of law, whether it was under color of state law, under color of parish law, that even though Rule 8 doesn't require a party to plead capacity, if a party does, and he pleads that he's a government official, that he's a government law enforcement officer, you can't change that in a reply later, a reply brief on appeal for the first time, without giving the defendants an opportunity at least to respond to that. So if you all are going to consider that issue, we would ask for supplemental briefing, like three pages on a letter brief I think would be sufficient to give us an opportunity to respond to that argument as it was raised for the first time here. I'm out of time. Thank you all. Okay. Thank you. Mr. Rhodes, you have time for rebuttal. Your Honor, or your Honors rather, when we filed the original complaint, we didn't know who Vera worked for. We assumed that he was working for the Houma Police Department. That proved to be incorrect. We then found out that the U.S. Attorney General's Office was involved when they filed their answer and told us that he was working for the state of Louisiana probation and parole. But it wasn't until later that we found out that he was actually working by virtue of a contract, the event contract, where he was under the behest of Terre Carnival Club, and he's getting paid by Terre Carnival Club. Now, there's a lot of ins and outs, which of course Terre Carnival Club is a private entity. So it's very rare. I don't know if I've ever seen the situation where an officer in one hand is arguing he's entitled to qualified immunity, but he's literally entitled to be indemnified 100 percent by a private entity by the damages that he causes another person, according to this contract. So it's almost as though qualified immunity is overkill because he's shielded from it anyway. He's not going to have to pay one dime of this judgment because of that indemnity contract. So I think it's disingenuous what she said with regard to – I mean, even when you have insurance, you don't want to be held responsible for a car accident. Oh, I agree with you. I agree with that. I agree. Do you? Oh, no, I agree with that. But with regard to the excessiveness, Judge Barbier almost implied that it was excessive because he wouldn't have gotten to the qualified immunity argument if he didn't first find that there was a possibility that there was excessiveness. So when Judge Barbier ended up dismissing it based upon qualified immunity, but then he also adds, after he says that, he adds, well, he didn't need probable cause anyway because he was acting as a security guard. It's almost as if the trial court found excessiveness to get to the qualified immunity issue. And so now they're arguing about it wasn't excessive and so forth, but I think that the trial court, to get to where it had to be to get this case dismissed, was to get on to the qualified immunity issue. And I think the judge was wrong in that situation because not only is, I feel, that qualified immunity is not generally available to a private security guard. Yeah, okay, he was in a public facility, but it was a private event that was not open to the public and it didn't serve a governmental interest except for lease payments to the civic center. So I think ultimately we've proven that qualified immunity is inapplicable, and I think ultimately that we've carved an exception if qualified immunity is inapplicable because Officer Vera, at all times pertinent, violated a clearly established constitutional right that Mr. Walker had. If it is applicable, you still win in your opinion. That's correct. That's correct because we've actually carved out that clear rule of violation because qualified immunity is qualified immunity. It's not absolute immunity. So if we could prove that clearly established rule, which we did by the Hanks case, and we also distinguish it from the Heaney case because they said that the Heaney was— Do you agree that the facts are not disputed as to what led up to him grabbing your client? Well, no, because Vera disputes what we say and we dispute what Vera says. Okay. So you disagree with your opponent's argument. Right, because Vera's allegations are completely uncorroborated. And different. I mean, that's the point. And different. It's like saying the car wreck was because you ran the red light and you're saying, no, I ran the red light. But Mr. Larbeter has four or five witnesses that testify on his behalf and say the way it happened. But Judge Barbier opted to go with Officer Vera's version of events, which is not proper in a summary judgment context. But I thank you for your time. Appreciate it. Okay. Thank you, both sides, for their arguments. The case is now under submission.